65    9
82   459
65      9
52 LRA 975n

Jones, Administrator, etc., Respondent, vs. Orton, Administrator, etc., Appellant.

*December 7 — December 23, 1885.*

*(1) Estates of decedents: Claims: Limitation: Interest an incident of principal debt. (2) Evidence: Account books.*

1. In 1862, X., as executor, sold and conveyed land to the firm of C., M. & Co., who paid the agreed price less $1,450, the amount of a mortgage on the land. It was understood that the firm would pay that amount to X., but they failed to do so, and at their request X. paid the interest to the mortgagee for thirteen years. In 1880, M., a member of the firm of C., M. & Co., died. X., alleging that he had accounted therefor to the estate of his testator, presented a

claim against the estate of M. for the unpaid $1,450 of the purchase price of the land and for the thirteen payments of interest. The claim for the $1,450, and all payments of interest except two, were disallowed on the ground that they were barred by the statute of limitations. *Held*, that the claim for the last two payments of interest should also have been disallowed, the interest being merely an incident of the principal debt and necessarily falling with it.

2. Account books may be admissible in evidence to prove the delivery of articles charged therein, although the entries do not show the price of each article.

APPEAL from the Circuit Court for *Grant* County.

Gabriel Mills, the defendant's intestate, died in 1880. In 1881, John M. Chandler, the plaintiff's intestate, presented an account against the estate of Mills for a large amount, and it was allowed by the commissioners duly appointed to adjust claims, at $3,440.70. An appeal from this determination was taken to the circuit court, and, after a hearing, that court allowed the claim at $2,177.04, and gave judgment accordingly. In the meantime John M. Chandler died, and the claim was thereafter prosecuted by his administrator, duly appointed. The defendant administrator appeals from the judgment of the circuit court.

The facts upon which the claim of Chandler is predicated, briefly stated, are as follows:

From 1862 to 1876 two firms were doing business at Hazel Green, in Grant county. One of these was the firm of Crawford, Mills & Co., of which the defendant's intestate was a member during all that time. This firm carried on a store for the sale of general merchandise, and works for smelting lead ore. It owned 1,400 acres of land in the vicinity, and was engaged in extensive improvements to develop its mineral resources. The other firm was that of Chandler & York, of which the plaintiff's intestate was a member. This firm carried on a drug business. It was dissolved in 1876, and thereupon John M. Chandler became the

owner of all debts and demands due the firm upon its dissolution.

These firms had extensive dealings with each other during their existence. Each had running accounts with the other; and the partners in each had individual running accounts with the other firm, which, by agreement between the firms, were, in some cases, chargeable to the firm of which each such individual partner was a member. The firms also loaned each other, from time to time, sums of money, aggregating a very large amount. They had other financial and business transactions which it may be necessary to refer to hereafter. They never had a settlement of their accounts.

Chandler's claim against the estate of Mills is made up of the balance alleged to be due from Crawford, Mills & Co. to Chandler & York, and of certain sums alleged to be due him individually from the same firm. His account consists of a large number of items, many of which were disallowed by the circuit court, some of them for want of proof and others because barred by the statute of limitations. The credits to the estate of Mills were all agreed upon, except a single item claimed by the firm. This item was disallowed by the circuit judge. Further reference to it will be found in the opinion.

For the appellant there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter*. To the point that if account books have not been kept, as a whole, so that they can be proved as the statute requires, they are not admissible at all to prove any item contained in them, they cited 1 Smith's L. C. 516, 517, *et seq.;* 2 Wait's Law & Pr. 445; *Doster v. Brown*, 25 Ga. 24; *Moss v. Vroman*, 5 Wis. 147; *Winner v. Bauman*, 28 id. 563; *Marsh v. Case*, 30 id. 531.

For the respondent there was a brief by *Clark & Mills*, and oral argument by *Mr. Clark* and *Mr. A. R. Bushnell*. As to the admissibility of the books of account, they cited 2 Wait's Law & Pr. 441–2, 446–7, 449; 1 Greenleaf on Ev.

secs. 117, 118; 20 Wend. 74; 8 Met. 269, 270; *Schettler v. Jones*, 20 Wis. 417–18; *Riggs v. Weise*, 24 id. 545–6.

LYON, J. The account presented by John M. Chandler against the estate of Gabriel Mills consists of thirty-five items or charges, of which twenty-two were disallowed by the circuit court. Of the thirteen charges allowed, seven, amounting to $6,500, were admitted, on the trial, by counsel for the defendant, to be proper charges against the estate. Those disallowed, and those admitted to be correct, require no consideration on this appeal. The six accounts which the court allowed against the objection of the defendant, are as follows:

1. July 18, 1870. Interest paid on accommodation note....... $35 00
2. July, 1874. Cash paid W. Wearne at request of Crawford, Mills & Co........................................... 145 00
3. July, 1875. Cash paid W. Wearne at request of Crawford, Mills & Co ........................................... 145 00
4. April 28, 1875. Goods and lumber furnished Crawford, Mills & Co., as per bill................................. 791 58
5. July 8, 1875. Goods furnished Gabriel Mills, as per bill..... 209 70
6. December 25, 1875. Goods furnished J. Crawford's estate, as per bill............................................ 409 78

These several items will be considered in the order stated.

1. Sometime in 1870 Chandler & York borrowed $2,000 from a bank for the accommodation of Crawford, Mills & Co., and gave the note of the firm therefor. Chandler & York afterwards paid their note, including $35 interest, which constitutes the first item allowed. In September of that year, Crawford, Mills & Co. paid the principal of the loan, $2,000, to Chandler & York, but did not pay the $35 of interest.

This item does not seem to have been charged up in the books of Chandler & York. It was a single, isolated transaction, which occurred nearly ten years before the death of Gabriel Mills. We find no proof of a valid subsequent

promise to pay it. The charge should have been disallowed, for the reason that the statute of limitations ran against it before Mills died.

2. The second and third charges allowed by the circuit court, which are for cash paid Wearne, arise out of a land transaction between John M. Chandler and Crawford, Mills & Co. In 1862, Chandler, then being the executor of the estate of one McCoy, under a will which authorized him to sell the real estate of which his testator died seized (*Chandler's Appeal*, 34 Wis. 505), sold and conveyed to Crawford, Mills & Co. certain lands, part and parcel of such estate. There was an outstanding mortgage on the land to one Wearne, given to secure the payment of $1,450, with ten per cent. interest thereon. Crawford, Mills & Co. paid the agreed price for the land, less this $1,450. It was the understanding between the parties to the conveyance that the grantees should pay to Chandler the amount of the mortgage debt, but they failed to do so. At their request Chandler paid Wearne the interest on such debt annually, from 1863 to 1875, inclusive.

The unpaid $1,450, and thirteen annual payments of interest thereon at ten per cent. are charged in Chandler's account against the estate of Gabriel Mills. He alleges that he has accounted therefor and paid the same to the beneficiaries under the will of McCoy, and hence that the claim belongs to him. The circuit court disallowed the claim for $1,450, and the claims for all payments of interest down to and including the payment made in 1873, on the ground that they were all barred by the statute of limitations. The rulings thus far were undoubtedly correct. But we are satisfied that the claims for interest paid in 1874 and 1875 should also have been disallowed. The principal debt having ceased to exist, the claim for interest accruing upon it thereafter cannot be maintained. The interest is only an

incident of the debt, and must necessarily fall with it. These two charges should have been disallowed.

3. The remaining three charges allowed by the circuit court, and challenged by the defendant, are for goods sold by Chandler & York to Crawford, Mills & Co., to Mills, and to the widow and heirs of Jefferson Crawford, who, after his death in 1868, became partners in the latter firm. . The books of Chandler & York containing these accounts were received in evidence. The entries therein were made by the partners and by one John Chandler, who was their clerk and book-keeper. . Those three persons testified to the facts required by the statute (R. S. sec. 4186) to entitle the books to be received in evidence. The cross-examination of these persons disclosed some errors, alterations, and discrepancies in the books, but nothing showing any intentional falsification of them. It appears that in many of the entries only the articles sold had been charged, without any price affixed thereto. These entries were mostly made by the partners. They were posted on the ledger by John Chandler, who then affixed a price to the articles sold. His testimony is to the effect that he affixed the regular market price in such cases.

It is claimed that books of original entry are not admissible under the statute, unless the price is affixed to each article charged therein. We think this too narrow a rule. No good reason is perceived why such books, properly verified, may not be presumptive proof of the delivery of articles charged, although no price is therein specified. In such cases the party producing them would be required to give other proof of values. Counsel for plaintiff has fairly demonstrated, on principle and by authority, that account books so kept are receivable in evidence. Although these books might have been better kept, the circuit judge was satisfied that the facts were proved which made them com-

petent evidence. Upon the testimony before us, we cannot say this was error. We assume that the judge corrected any errors in the accounts which were disclosed on the trial.

Interest was allowed upon these accounts from 1875. There is testimony to the effect that the parties were accustomed to charge interest on balances of account at the end of each year, and interest was allowed on the account of Crawford, Mills & Co. against Chandler & York, in like manner. We conclude that the three accounts for goods sold were properly allowed at the sums charged, with interest.

4. With the exception of one item, the credits to which the estate of Gabriel Mills was entitled in the accounting were agreed upon by the parties, and allowed. These credits aggregate over $7,500, besides interest thereon. The controverted item (which was disallowed) grew out of a purchase by Chandler & York of mineral lands adjoining the lands of Crawford, Mills & Co., at the request and for the alleged benefit of the latter firm. Crawford, Mills & Co. advanced $5,100 to make the first payment for the land and to pay expenses of the purchase. The defendant claims that the purchase was the joint adventure of the two firms, and the charge in question is for one half of the above sum, and interest thereon.

The finding of the circuit court on this charge is very long, and gives all the details of the transactions connected with this purchase. All the material facts found therein are, we think, fairly proved by the testimony. It appears therefrom that Crawford, Mills & Co. were negotiating for a sale of their mineral lands to certain Pittsburg parties, and believed that the sale would be consummated at a large price. The members of the firm conceived the idea that they might purchase an adjoining tract of mineral land, known as the "Curtiss land," and include the same in the sale at a large profit. The owner of the Curtiss land, Mrs.

Curtiss, resided in Pennsylvania. She was an old and inti-mate personal friend of Mr. York, and had great confidence in him. Crawford, Mills & Co. proposed to Chandler & York to become interested with them in such contemplated purchase; also that York should negotiate with the owner for the land, because of his relations to her, and that the title should be taken in the name of Chandler & York, so as to conceal from the Pittsburg parties the connection of Crawford, Mills & Co. with the transaction. Chandler & York declined these propositions. However, on the prom-ise of the latter firm that Chandler & York should have one half the profits realized on a sale of the land, if that firm would aid them in making the purchase, York went to Pennsylvania, purchased the land of Mrs. Curtiss for $14,000, and took conveyance thereof to Chandler & York. He paid on the purchase $5,000, advanced by Crawford, Mills & Co. Chandler & York executed a mortgage on the land to secure the balance of the purchase money. The pro-posed sale to the Pittsburg parties was never consum-mated. After some years Chandler & York effected a loan of $10,000, which they secured by mortgage on the Curtiss land, and with the money they paid the mortgage debt to Mrs. Curtiss. They paid the interest on this $10,000 for several years, and did not realize sufficient from the land to pay interest and taxes and necessary repairs and improve-ments. Chandler & York often requested Crawford, Mills & Co. to assume their liabilities, and relieve them from re-sponsibility on account of such land, but that was not done. Ultimately the $10,000 mortgage was foreclosed, and the mortgaged lands were sold for less than the amount due on the mortgage debt and costs.

In addition to the above facts, the court found "that no accounting was ever demanded by Crawford, Mills & Co., of Chandler & York, or either of them, on account of said land transaction; that it is probable if an accounting had

Jones, Adm'r, etc. vs. Orton, Adm'r, etc.

been had, even if Chandler & York were charged with one half of said $5,100, it would be found that Crawford, Mills & Co. were indebted to them on account of said transaction; that it was never understood that Chandler & York would be liable to Crawford, Mills & Co. for any part of said $5,100 advanced; that said transaction was not intended by any of the parties to constitute the firms of Chandler & York and Crawford, Mills & Co. partners in said land transaction; that said Crawford, Mills & Co., believing that a sure profit could be realized upon the purchase of the Curtiss place, were willing to risk the amount of money they did upon the said purchase, and, needing a third party to act for them in the transaction, they chose said York, because of his known relationship to the owner, and were willing that his firm, for his services, should receive one half of the profits certain to be made; that said claim, mentioned in the testimony, of $2,550 against Chandler & York was not pleaded as a counterclaim or action in offset; that if it had been, the statute of limitations could have been pleaded thereto, and would have been sustained, and it is probable that if the statute of limitations had not been insisted on (though it was insisted upon at the hearing), and if the court had gone into an accounting growing out of said transaction, nothing would have been found to have been due to Crawford, Mills & Co. thereon; that said claim, as to any balance due Crawford, Mills & Co. thereon, is not proven; that the same is barred by the statute of limitations, has not been pleaded in offset so as to be considered, and constitutes no valid item of credit in favor of the estate of Gabriel Mills in this suit."

On the above facts it is clear that the charge in the defendant's account of one half the sum paid by Crawford, Mills & Co. on account of the purchase of the Curtiss land, was properly disallowed.

Other questions were discussed by counsel, but their con-

sideration is not deemed essential to a correct determination of the case. The books of both firms were inartificially, often carelessly, kept, and the firms never had a full settlement of their accounts. Transactions between them were very numerous, and their dealings with each other were large and continuous. Crawford, Mills, and Chandler, all prominent actors in those transactions, are dead. Of course, absolute accuracy is unattainable in such a case. It is believed, however, that, with the corrections herein indicated, the account will be as nearly just as it can now be made.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to that court to deduct from the sum allowed the plaintiff the amount of the three charges herein held to have been improperly allowed, and the interest allowed thereon, and to give judgment for the plaintiff for the balance, to be paid in due course of administration.