HOWARD *v.* FACTORY LAND CO.

JOINT STOCK COMPANIES — PARTNERSHIP ASSOCIATIONS LIMITED —
CONTRACTS—STATUTES.

> A contract of a partnership association, limited, for the pur-
> chase of real property, signed by one of the association man-
> agers, creating a liability of more than $500, was valid where
> the action was authorized by the board of directors, and the
> record of the meeting at which the contract was authorized
> was kept in writing.   2 Comp. Laws, § 6083.

Appeal from St. Clair; Law, J.   Submitted February
16, 1911.   (Docket No. 112.)   Decided May 8, 1911.   Re-
hearing denied December 8, 1911.

Bill by Rose Howard against the Factory Land Com-
pany, Limited, George B. Lloyd, Violet Lloyd, Emery
Brown, William A. Jowett, and Mary A. Jowett to fore-
close a land contract.   From a decree for complainant,
defendants appeal.   Affirmed.

*Walsh & Walsh*, for complainant.

*W. L. Jenks*, for defendants.

BLAIR, J.   The bill of complaint in this suit was filed
by complainant, as heir at law and devisee of Peter Land-
schoot, to foreclose a contract for the sale of land, dated
March 11, 1903, signed by Peter Landschoot, as vendor,
and the Factory Land Company, Limited, by W. L.
Jenks, chairman, as vendee.

The defendant company was organized under Act 191
of the Public Acts of 1877, art. 3 (2 Comp. Laws, § 6079 *et
seq.*), defining its business as the purchasing, improving,
and selling of land, encouraging manufacturing, building,
and renting of houses, warehouses, docks, factories, etc.
The records of the company show that at a meeting of

the board of managers, held March 3, 1903, at which all were present, except Chairman W. L. Jenks, "Land contract of Landschoot was submitted and action deferred until next meeting;" that at a meeting held March 10, 1903, with the same men present, "Moved and supported that the land contract with Landschoot be closed. Motion carried." It appears from the evidence of Mr. Jenks that he drew the contract in question some time in February, and signed it, and was thereafter absent from Port Huron until after the middle of March, and, from the evidence of E. L. Moak, that the contract is dated March 11th and the first payment was made on that date. The date was written in by Secretary Moak. The contract itself, Exhibit A, shows that it was signed by Peter Landschoot and W. L. Jenks, chairman, for the Factory Land Company, and was not signed by any other manager or officer of the company.

Payments were made upon the contract by the company, beginning March 11, 1903, down to and including March 25, 1910, and there is a balance unpaid substantially equal to the original price. The contract provided that the property might be platted and separate lots sold, and deed given by the vendor to any lot upon the payment of $100. It appears on the testimony of the secretary that the property was surveyed, stakes driven, but the plat was not recorded or made public; that lot 7 in block 1 was sold upon contract to Jowett, and lot 10 in block 1 upon contract to Lloyd; that a house has been built by defendant upon the Lloyd lot, and cellar excavated and yard graded; that the value of this house is about $1,500, and that it could be removed without injury to the property; that the Jowett place is worth from $800 to $1,200. The managers of the defendant partnership association, in March, 1903, were W. L. Jenks, chairman; E. L. Moak, secretary; F. A. Peavey; E. H. Moak; and T. A. Goulden.

Defendant in its answer denies that it ever "made any

-valid or legal contract for the purchase of said land," and .asks relief as follows:

"This defendant, Factory Land Company, Limited, alleges that it built, or caused to be built, one house upon the land described in said bill, of the value of $1,500, and that the removal of the same would not in any wise injure or depreciate the value of the remaining property; that the complainant is not entitled to retain the said building, nor the said amount of money so paid, as aforesaid, by this defendant, and that this defendant is entitled to a return of said money and the right to remove said dwelling house, and this defendant asks the same aid of this court in the matter as if it had itself begun proceedings in this court for the ascertainment and decision of its rights in the premises.

"These defendants therefore ask that the bill of complaint of said complainant be dismissed, with costs, and that it, the Factory Land Company, Limited, be decreed to have a lien upon said premises for the amount of money paid, as aforesaid by it, and also the right to remove the said building erected by it."

It was stipulated that the answer of the land company should be considered the answer of the purchasers from it of a part of the land involved.

On June 29, 1910, the day of hearing, there was due and payable the sum of $1,547.84, which includes $52.68 taxes paid. The whole sum yet remaining unpaid on June 29, 1910, was $2,622.91.

From a decree in favor of complainant, defendants appeal to this court.

Defendants' counsel contends that the contract in question is a mere nullity, without force as to either party, citing in support of his contention: *Citizens' Sav. Bank* v. *Vaughan,* 115 Mich. 156 (73 N. W. 143); *Rhoades* v. *Pure Food Co.,* 149 Mich. 235 (112 N. W. 940); *Armstrong* v. *Stearns,* 156 Mich. 597 (121 N. W. 312); *Hoyt* v. *Grape Juice Co.,* 158 Mich. 619 (123 N. W. 529); *Beach* v. *Publishing Co.,* 163 Mich. 226 (128 N. W. 177).

The present case differs from the cases cited, and others

involving the validity of such agreements in that the agreement was authorized by every one of the managers, and a record made in writing upon the books of the association, showing such authorization. Although the paper was signed by the chairman in advance, doubtless, in view of his anticipated departure from the State, it was not treated as an executed agreement, as appears from the records of the company. It appears that the shareholders had provided for and elected an advisory board of directors, consisting of five members, and they were always treated the same as if they were managers; that is, called to all meetings, and their voice and vote was taken. There were five managers and six directors, so-called, and meetings were called of the five so-called directors with the managers.

The record for March 10th shows the following:

"At a meeting of the board of managers and directors of the Factory Land Company, Limited, called by order of the vice chairman and held at the First National Exchange Bank, March 10, 1903. Present, the entire board of managers and directors, except W. L. Jenks. Moved and supported that the land contract with Landschoot be closed. Motion carried."

It further appears that the blanks for dates, which were unfilled when the proposed contract was submitted to the board March 3d, were filled in on March 11th, and that a material clause of the contract as prepared by the chairman was stricken out on March 11th. Other slight changes were also made. It thus appears that this contract, as it was delivered to Mr. Landschoot, was authorized and concurred in by every member of the board of managers, and that such concurrence is shown by written evidence.

We think that this action of the board, preserved in its records, complies with the spirit of the statute, and the decree is affirmed.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.